# Kirstein, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Obstruction of crossing—Fire engine— Nonsuit.*

In an action to recover damages from a railroad company for injuries sustained in consequence of the obstruction of a grade crossing by a passing train whereby a fire engine was delayed in

reaching plaintiff's building, which had caught fire, where it did not appear that those who were in charge, of the train knew or ought to have known of the existence of the particular fire when they were employing or were about to employ the crossing with their train, or that from the time the gates were closed until they were raised it was reasonably practicable for the defendant to adopt other methods in clearing the crossing, that would have enabled the fire engine to sooner reach the fire, the trial judge made no error in entering a compulsory nonsuit.

Argued Jan. 19, 1917.   Appeal, No. 240, Jan. T., 1917, by plaintiff, from final order of C. P. No. 4, Philadelphia Co., Dec. T., 1910, No. 2664, refusing to take off a nonsuit in case of Herman Kirstein v. Philadelphia & Reading Railway Company.   Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ.   Affirmed.

Trespass to recover damages for injuries to plaintiff's buildings caused by fire.   Before FINLETTER, J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off.   Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Frederick S. Drake,* with him *Samuel L. Howell* and *John Weaver,* for appellant.

*Wm. Clarke Mason,* for appellee.

OPINION BY MR. JUSTICE STEWART, March 19, 1917:

The plaintiff was the owner of a wheelwright shop located about half a square north of a point where the tracks of the defendant company cross at grade Frankford avenue, in the City of Philadelphia.   About 12:45 p. m., on Saturday, September 18, 1909, a fire broke out underneath a shed in the yard adjoining the shop. . The fire department promptly responded to an alarm sent it, and dispatched several fire engines to the scene of the

fire. When the engines reached the railroad crossing, a half square from the fire, their further progress was obstructed by the gates to the crossing which were then closed. A train of empty cars was then approaching the crossing from the east, and within about four hundred feet of it. At the same time another train of empty cars was approaching from the west, but at somewhat greater distance. The gates were closed to give the trains the exclusive right of way over the crossing, and they remained closed until both trains had cleared, a period of from ten to thirteen minutes, during which time the fire engines were prevented from proceeding to the fire. The plaintiff's contention was that this delay was the result of the defendant's negligence, and that it increased materially his loss from the fire. The action, charging negligence, was brought to recover compensation. A nonsuit was directed, and from the refusal of the court to take it off we have this appeal.

If the evidence submitted would have supported a finding of failure on part of the defendant's employees to perform a manifest duty important to the plaintiff by way of preventing the injury which he claims to have sustained, the case should have been submitted to the jury; otherwise the court was right in directing a nonsuit. By the term "manifest duty" we mean a duty which it would be wilfulness or wantoness to disregard, as distinguished from a duty the nonobservance of which is to be referred to inattention or thoughtlessness. The former is always predicated on purpose or design, the latter never. If the employees of the defendant company knew when their several trains were approaching the crossing, that a fire was endangering or destroying the plaintiff's property but a half square distant, and that the use of the crossing by the railroad company for its own purpose would prevent the fire engines from reaching the scene of the fire and rendering timely service in extinguishing the fire, it would have been a manifest duty resting on them to do whatever was reasonably

practicable to remove any obstruction to the immediate crossing of the fire engines.   When it is sought to charge a railroad company with negligence for allowing such obstruction as here occurred, it is first of all essential that it be made to appear that those in charge of the trains, who were directly responsible for their control, knew or ought to have known when they were employing, or about to employ the crossing with their trains, of the unforeseen conditions existing which made such employment, or use of the crossing likely to cause the injury for which recovery is sought.   We see nothing in the evidence indicating even in remote way that any of the defendant's employees knew of the existence of this particular fire.   It does not appear that it was at any time within their view.   They saw that the gates were closed as they passed along on the tracks, and they saw the fire engines standing there awaiting their removal, and they may or may not have heard the call of the several bystanders who testified that they called—"cut the train," but this comes very far short of showing such knowledge of the situation as would charge them with a manifest duty to do something out of the usual to meet an emergency that could not have been foreseen, and about which they could at best only conjecture.   In what we have said we include as well the gateman or flagman.   It does not appear that he saw, or could have seen the fire from where he was placed.   One witness testified that having himself discovered the fire he told the gateman of the fact; just what he said does not appear, but it was at a time when the gates were already closed.   No one testified that the closing of the gates occurred after the fact of the fire had become known, or that they remained closed unduly after the trains had cleared the crossing.

Again, it is quite as essential to a recovery that the plaintiff show that he sustained loss by and in consequence of what the party charged did, or failed to do. The detention of the fire engines was from ten to thirteen minutes.   There is not a suggestion in the testimony

coming from any one, that from the time the gates were closed until they were raised or lifted it was reasonably practicable for the defendant to adopt other methods than it did of clearing the crossing that would have enabled the fire engines to sooner reach the fire. Certainly a jury is not to be allowed to assume the affirmative of such proposition in the absence of evidence. Apart from other considerations, except as another method existed, reasonably practicable, of clearing the tracks so as to admit of the crossing of the fire engines with shorter delay, no liability could rest on defendant.

We see no merit in the appeal. The judgment is affirmed.